UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

RICHARD WEAN,

Plaintiff,

v. Case No. 2:26-cv-2167-SPC-KRH

BARRY GATTA, ROBERT VELEZ, JARAD ANDERSON, SHEVAUN HARRIS, and JEREMY BARR,

Defendants.
_________________________________/

**OPINION AND ORDER**

Richard Wean, a civilly-committed resident of the Florida Civil Commitment Center (FCCC), commenced this action by filing a *pro se* civil rights complaint under 42 U.S.C. § 1983. (Doc. 1.) The Court granted Wean's motion to proceed *in forma pauperis*. (Doc. 11.) The complaint is now before the Court for initial screening under 28 U.S.C. § 1915(e)(2)(B).[1]

[1] A plaintiff proceeding *in forma pauperis* will have his complaint screened under 28 U.S.C. § 1915(e)(2)(B). This screening procedure requires the Court to dismiss a civil action prior to service if it determines that the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary damages from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)–(iii). Even though Wean is not a prisoner, his pleadings are still subject to initial review under § 1915(e)(2)(B). *See Troville v. Venz*, 303 F.3d 1256, 1260 (11th Cir. 2002) (recognizing that the district court did not err when it reviewed a complaint filed by a civil detainee under section 1915(e)(2)(B)).

After careful review, the Court dismisses the complaint because it does not state a claim on which relief may be granted. Wean may file an amended complaint if he wishes to proceed.

## I. Complaint[2]

Wean sues FCCC Investigator Barry Gatta, FCCC Security Officer Robert Velez, FCCC Director Jarad Anderson, DCF Secretary Shevaun Harris, and RecSol Recovery Solutions President Jeremy Barr. (Doc. 1 at 2.) Wean alleges the following relevant facts in his complaint: He wrote a song—which he describes as a parody—called "King of Porn." (Doc. 1 at 2–3.) The lyrics of Wean's song suggest that he is running a business selling pornography at the FCCC. (*Id.* at 3.)[3] On May 14, 2026, Gatta reviewed Wean's jump drive and discovered the lyrics. (*Id.* at 6.) Gatta wrote a Behavior Management Report (BMR) accusing Wean of operating a business, which is against FCCC rules. (*Id.*) Earlier, Wean had been caught with adult pornography on two other

---

[2] In addition to the original petition, filed on July 10, 2026, Wean filed 52 pages of "supplements" on August 7, 2026. (Doc. 10.) The August 7 documents do not appear to be related to the claims raised in the original complaint and it is unclear that they were intended form this case. Nevertheless, a plaintiff may not amend his complaint in a piecemeal fashion by filing multiple pleadings intended to be read as a single complaint. Once an amended complaint is filed, the earlier complaint no longer serves any function in the case. *See Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1219 (11th Cir. 2007). Thus, the Court will ignore the supplemental pleading, although Wean may incorporate it into an amended compliant should he chose to file one.

[3] In a separate motion, Wean asserts that "[i]n this song Plaintiff wrote about having a sale on pornography, paying corrupt staff to bring it into the facility for 24 years, having a Camen Island bank account and other ridiculous actions." (Doc. 9.)

devices, and Gatta used that fact and the lyrics of "King of Porn" to support the BMR's allegations. (*Id.*) Gatta confiscated the jump drive "which contains all of [Wean's] legal work, family pictures, treatment work, medical records, personal letters, grievances, communications, and other important scanned documents[.]" (*Id.* at 7.)[4]

The FCCC held a hearing on the BMR. (Doc. 1 at 7.) At the hearing, Wean explained that his song was a work of fiction and insisted that he was not running a business. (*Id.*) However, Velez determined that— based on the song lyrics suggesting otherwise and Wean's possession of pornography on two separate devices—he was operating a pornography business. (*Id.* at 8.) Wean was found guilty and received thirty days in confinement and his CARE Level was restarted. (*Id.*)

Velez refused to return the jump drive because it contained contraband. (Doc. 9-1 at 3.) Wean asserts that issuance of the BMR and the defendants' subsequent refusals to return his jump drive were in retaliation for his prior lawsuits and were both done to "hinder [Wean's ability] to respond to 2 separate motions for summary judgment in case numbers 2:23-cv-302-SPC-NPM and 2:24-cv-1111-KCD-NPM." (Doc. 1 at 9.)

---

[4] The Court corrects minor spelling and grammar errors when quoting Wean's pleadings.

Wean seeks monetary damages against the defendants for their imposition of "mental anguish and emotional distress upon him while he was acting under the protective umbrella of the First and Fourteenth Amendments." (Doc. 1 at 12.)

## II. Discussion

Dismissals for failure to state a claim under § 1915(e)(2)(B)(ii) are governed by the same standard as Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In other words, a complaint may not rest on " 'naked assertions[s]' devoid of 'further factual enhancement.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Instead, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

### A. Due process or retaliation claims based on Gatta's issuance of the BMR are both premature and dismissed for failure to state a claim on which relief may be granted.

Wean does not claim that he was provided inadequate due process during his disciplinary proceedings. He claims that he was sanctioned undeservedly as a substantive matter because he did not engage in the behavior of which he was accused. He specifically asserts that Gatta fabricated a BMR based on a

desire to retaliate against him for filing two prior lawsuits. He claims that Velez found him guilty of the infraction only because he (Wean) filed other lawsuits. These allegations, if proven, would show that Wean was innocent of the charges alleged in the BMR and would necessarily imply the invalidity of the conviction. However, Wean does not allege that the BMR was overturned.

In *Heck v. Humphrey*, 512 U.S. 477, 489 (1994), the United States Supreme Court stated that a § 1983 cause of action "attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." A "conviction" for purposes of *Heck*, includes a ruling in a prison disciplinary proceeding. *Edwards v. Balisok*, 520 U.S. 641, 648 (1997).[5] The *Balisok* Court specifically held that claims "for declaratory relief and money damages, based on allegations of deceit and bias on the part of the decisionmaker that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983." *Id.* at 648.

---

[5] The Court recognized that Wean is not a prisoner. The Supreme Court has concluded that, as a general rule, civil detainees are "entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Youngberg v. Romeo*, 457 U.S. 307, 322 (1982). The Eleventh Circuit explains that "*Youngberg* establishes that the due process rights of the involuntarily civilly committed are at least as extensive as the Eighth Amendment rights of the criminally institutionalized, and therefore, relevant case law in the Eighth Amendment context also serves to set forth the contours of the due process rights of the civilly committed." *Lavender v. Kearney*, 206 F. App'x 860, 863 (11th Cir. 2006) (quoting *Dolihite v. Maughon*, 74 F.3d 1027, 1041 (11th Cir. 1996) (quotation marks omitted)).

Thus, to the extent Wean seeks relief for Gatta's or Velez's alleged unfairness during the disciplinary proceedings, his § 1983 claims have not yet accrued because the disciplinary charges were not terminated in his favor. *See Hall v. Porfert*, No. 22-12184, 2023 WL 6274833, at *1 (11th Cir. Sept. 26, 2023) (applying the *Heck* doctrine to claims by an FCCC resident that he received an unfair BMR).

Wean fares no better on a claim arguing that he received the BMR and attendant sanctions in retaliation for filing other cases in federal district court. First, the Eleventh Circuit has specifically applied the *Heck* bar to both due process attacks on disciplinary hearings and First Amendment retaliation claims. *See*, *e.g.*, *Hall*, 2023 WL 6274833, at * 1. Next, Wean admits that he was found guilty of operating a business at the FCCC. The Eleventh Circuit has explained that a prisoner cannot maintain a retaliation claim when he is convicted of the actual behavioral violation underlying the alleged retaliatory false disciplinary report and there is some evidence to sustain the conviction. *O'Bryant v. Finch*, 637 F.3d 1207 (11th Cir. 2011). The *O'Bryant* Court explained that, "to find otherwise would render the prison disciplinary system impotent by inviting prisoners to petition the courts for a full retrial each time they are found guilty of an actual disciplinary infraction after having filed a grievance." (*Id.* at 1215–16.) The "some evidence" standard is satisfied even by a meager showing, so long as the "record is not so devoid of evidence" as to

render the tribunal's determination arbitrary. *Superintendent v. Hill*, 472 U.S. 445, 457 (1985).

Wean complains that there was no evidence to support a finding that he operated a business at the FCCC. However, he admits that the parodic lyrics of his song reflected that he sold pornography at the facility, and he also admits that pornography was found on two of his storage devices. In short, there was some evidence to support Velez's finding of guilt, and as a result, Wean cannot state a constitutional claim based on the facts alleged here.

### B. Officials may not be held liable under § 1983 for the unconstitutional conduct of their subordinates.

Wean asserts that Defendants Anderson, Harris, and Barr knew that inadequate evidence was presented in the disciplinary hearing and that they are refusing to return his jump drive in retaliation for other civil cases he has filed. He claims that it is "Anderson's responsibility as the Director of the FCCC to ensure that the mental health patients presently being cared for by his staff are not retaliated against by employees under his supervision[.]" He asserts that "[i]t is ultimately Harris's responsibility as the Director of DCF to ensure the mental health patients presently being cared for by DCF's chosen contracted employees are not retaliated against by this private for-profit company and their employees[.]" He asserts that "[i]t is ultimately Barr's responsibility as the President and CEO of RecSol Recovery Solutions which is contracted by the DCF to ensure the mental health patients presently being

cared for by his private for-profit company employees are not retaliated against by his employees[.]" (Doc. 1 at 9–11.)

As explained above, any claims based on the process received in the disciplinary hearing are *Heck*-barred and do not state a claim on which relief may be granted. But even if these claims were cognizable, which they are not, a defendant cannot be held liable under § 1983 based solely on the theory of respondeat superior or vicarious liability. *Hyland v. Kolhage*, 267 F. App'x 836, 841 (11th Cir. 2008); *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990). Supervisory liability can be established only "when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation." *Mathews v. Crosby*, 480 F.3d 1265, 1270 (11th Cir. 2007) (internal quotations omitted). When determining whether there is a causal connection between a defendant's action and the alleged deprivation of a constitutional right, mere knowledge of a potential deprivation is insufficient to impose liability on a supervisor. *Iqbal*, 556 U.S. at 677. Rather, in order to state a claim against the supervisor, the plaintiff must allege purposeful action by the supervisor to deprive plaintiff of a constitutional right. *Id.*

Wean does not allege that Anderson, Harris, or Barr personally participated in the proceedings that lead to the confiscation of his jump drive. He tries to show a causal connection to his alleged constitutional deprivation

by suggesting that he informed the defendants, by writing letters after the fact, that Velez had not returned his jump drive, but his concerns were not addressed. But Wean does not have a constitutional right to have his letters answered, and this is not a situation where "a history of widespread abuse put[] the responsible supervisor on notice of the need to correct the alleged deprivation, and he fail[ed] to do so" or where the defendants' "custom or policy result[ed] in deliberate indifference to [Plaintiff's] constitutional rights." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). In short, Wean attempts to attribute liability to these defendants based primarily (or solely) on their positions as Gatta's and Velez's supervisors, but vicarious liability cannot support a § 1983 claim.

**C. Wean has not shown standing to raise a claim based on interference with his access to the courts.**

The Court also liberally construes Wean's complaint as arguing that Velez interfered with his access to the courts by confiscating and refusing to return his jump drive.

The detained have a fundamental right of access to the courts under the First Amendment. *Lewis v. Casey*, 518 U.S. 343, 346 (1996). However, even the intentional deprivation of legal material by officials does not, standing alone, establish a constitutional access claim. Instead, to have standing to bring such a claim, the plaintiff must establish that he suffered an actual injury to a non-frivolous claim as a result of the defendants' alleged interference. *Lewis*, 518

U.S. at 349. An "actual injury" does not occur "without a showing that such a claim has been lost or rejected, or that the presentation of such a claim is currently being prevented." *Root v. Towers*, 238 F.3d 423 (6th Cir. 2000). In other words, a detainee who claims interference with his access to the courts fails to state a claim unless he shows actual prejudice to his litigation.

Here, Wean argues that his litigation efforts have been hampered in two cases: 2:23-cv-302-SPC-NPM and 2:24-cv-1111-KCD-NPM. In *Wean v. Masters, et al.*, 2:23-cv-302-SPC-NPM (*Masters*) (alleging that Wean had not been provided an appropriate medical mattress), Wean was able to answer the defendants' motion for summary judgment in a 527-page response that included all of his sick call requests, resident communication forms, provider notes, medical records, appointment notes, grievance forms, and emails. (*Masters,* Doc. 131.) Wean did not allege that he could not adequately respond to the motion for summary judgment due to any defendant's refusal to return his jump drive. The Court granted summary judgment to the defendants, finding that the undisputed evidence showed that they had exercised professional judgment in Wean's treatment. (*Masters*, Doc. 129.)

*Wean v. De Loach, et al.*, (2:24-cv-1111-KCD-NPM) (*De Loach*) (alleging that the FCCC is not providing Wean with pain medication) is still pending. In *De Loach*, Wean recently requested the Court to direct the FCCC to mail a paper copy of his large (600 page) response to the defendants' motion for

summary judgment. (*De Loach*, Doc. 38.) He does not assert in that case that he cannot respond to the motion due to any defendant's refusal to return his jump drive.

In short, Wean does not explain how access to his jump drive would have saved him from summary judgment in *Masters* or would aid him in *De Loach*. Thus, he has not demonstrated standing to raise a First Amendment access claim.

**D. The Court will not direct the FCCC to store Wean's jump drive.**

Wean asks the Court to order the defendants to store his confiscated jump drive. (Doc. 9 at 4.) To the motion, he attaches a June 3, 2026 FCCC Resident Communication Form in which he asks Valez to store his jump drive. (*Id.*) In response, Velez explained that "[a]s per policy, any electronic media storage device that is seized for search will be returned to the resident as soon as investigation is completed if no contraband is found on the device." (*Id.*) On July 24, 2026, Velez informed Wean that his jump drive *had* been used to store contraband and that it would not be returned to him. (Doc. 9-1 at 3.)

The law is well settled that federal courts should refrain from unwarranted interference in the day-to-day operations of prisons. *See Bell v. Wolfish*, 441 U.S. 520, 547 (1979). It is also well established that "[r]andom searches of inmates, individually or collectively, and their cells and lockers are valid and necessary to ensure the security of the institution and the safety of

inmates and all others within its boundaries." *Hudson v. Palmer*, 468 U.S. 517, 529 (1984) (quoting *Marrero v. Commonwealth*, 284 S.E.2d 809, 811 (Va. 1981)). While the Court recognizes that Wean is not a "prisoner" so as to make these cases completely on point, similar security concerns apply to those who have been determined to be sexually violent predators and housed in a civil confinement residential setting. *See Pesci v. Budz*, 730 F.3d 1291, 1299 (11th Cir. 2013) ("Although not a prison, the FCCC is a facility that houses approximately 600 persons involuntarily committed as sexually violent predators after their terms of incarceration. Florida law commands both that the facility be secure and that it serve a rehabilitative purpose, thus making [security concerns] every bit as relevant and legitimate here as in the prison context.").

At this stage of litigation, Wean has not even alleged a cognizable claim. Directing the FCCC to change its policy on contraband found on electronic devices would amount to unwarranted interference with its operation. Thus, his motion is denied.

## III. Conclusion

Wean's complaint is dismissed because it does not state a claim on which relief may be granted. Because Wean proceeds *pro se*, he may file an amended complaint if he wishes to proceed. *Sifford v. Ford*, 701 F. App'x 794, 796 (11th Cir. 2017) ("Generally, a district court must sua sponte provide a pro se

plaintiff at least one opportunity to amend his complaint, even where the plaintiff did not request leave to amend.”). Before amending, Wean should carefully read this Order to determine whether he will be able to state an actionable civil rights claim against any of these defendants.[6]

Accordingly, it is now **ORDERED:**

1. Wean’s complaint is **DISMISSED without prejudice** because it does not state a claim on which relief may be granted. He may file an amended complaint within **TWENTY-ONE (21) DAYS** from the date of this Order.

2. Wean’s motion to order the defendants to hold his jump drive (Doc. 9) is **DENIED**.

3. The Clerk is **DIRECTED** to provide Wean a copy of the standard 42 U.S.C. § 1983 civil rights complaint form.

**DONE AND ORDERED** in Fort Myers, Florida on October 20, 2026,

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Encl: civil rights complaint form
FTMP-2

[6] If Wean does not file an amended complaint within the time allotted, this order will become a final judgment. *See Auto. Alignment & Body Serv., Inc. v. State Farm Mut. Auto. Ins. Co.*, 953 F.3d 707, 719–20 (11th Cir. 2020).